# 16-3682-CR

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

JORDAN HIDALGO,

*Defendant-Appellant.*

*On Appeal from the United States District Court
for the Western District of New York (Buffalo)*

## BRIEF FOR DEFENDANT-APPELLANT JORDAN HIDALGO

STEVEN Y. YUROWITZ, ESQ.
*Attorney for Defendant-Appellant*
950 Third Avenue, 32nd Floor
New York, New York 10022
212-308-7900

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................................... 1

QUESTIONS PRESENTED.......................................................................................... 2

STATEMENT OF THE CASE....................................................................................... 2

STATEMENT OF FACTS.............................................................................................. 3

    A.  Indictment. ....................................................................................................... 3

    B.  Trial. ................................................................................................................. 3

    C.  Sentencing...................................................................................................... 7

SUMMARY OF ARGUMENT ...................................................................................... 7

ARGUMENT ................................................................................................................. 9

    POINT I: HIDALGO WAS DEPRIVED OF A FAIR TRIAL WHEN THE
    DISTRICT COURT DENIED HIS REQUEST TO INSTRUCT THE JURY ON
    JUSTIFICATION ...................................................................................................... 9

    POINT II:  HIDALGO WAS IMPROPERLY CONVICTED OF THE
    ENHANCED OFFENSE WHEN THE INDICTMENT FAILED TO ALLEGE
    THE "PHYSICAL CONTACT" ELEMENT NECESSITATING THE
    VACATUR OF APPELLANT'S SENTENCE ............................................................ 12

CONCLUSION ...........................................................................................................167

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Crane v Kentucky,* 476 U.S. 683 (1986) ................................................................. 9

*Sams v. United States*, 721 A.2d 945 (D.C. 1998) ................................................. 12

*United States v. Cordoba-Murgas*, 422 F.3d 65 (2d Cir. 2005) ........................... 15

*United States v. Gonzalez*, 686 F.3d 122 (2nd Cir. 2012) ..................................... 16

*United States v. Guyon*, 717 F.2d 1536 (6th Cir. 1983) ....................................... 12

*United States v. Moreno-Montenegro,* 553 Fed.Appx. 29 (2d Cir. 2014) ............. 17

*United States v. Morton*, 999 F.2d 435 (9th Cir. 1993) ........................................ 10

**Statutes**

18 U.S.C. § 3013 ................................................................................................... 16

18 U.S.C. §111(a) ................................................................................................. 13

18 U.S.C. §111(b) ................................................................................................. 13

**Other Authorities**

L. Sand, et al., Modern Federal Jury Instructions, Instruction 14-2 ................... 14

**PRELIMINARY STATEMENT**

Defendant-appellant Jordan Hidalgo ("Hidalgo" or "appellant") appeals from a judgment of the United States District Court for the Western District of New York (Arcara J.), entered September 30, 2016, convicting Hidalgo after a jury trial of one count of assaulting a federal officer and inflicting bodily injury, in violation of 18 U.S.C. §§111(a)(1) and (b). Hidalgo was sentenced to 240-months imprisonment to run concurrent to his sentence of 262-months imprisonment imposed at the same time after his plea to charges contained in a separate earlier indictment (11 Cr. 151) (the 2011 charges), 3 years supervised release again concurrent to a 5-year term of supervised release imposed in connection with the 2011 charges. Hidalgo is incarcerated at the Coleman USP pursuant to the judgment appealed.

**JURISDICTIONAL STATEMENT**

The basis for subject matter jurisdiction in the district court was 18 U.S.C. §3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. §1291. This is an appeal from a final judgment, entered September 30, 2016. A291-296. After the district court granted Hidalgo's motion to file a notice of appeal out of time, his notice of appeal was filed on October 30, 2016. Doc#82; A297.[1]

---

[1] "A__" refers to pagination in the appendix; "T." refers to the trial transcript page;

**QUESTIONS PRESENTED**

1.  Was appellant deprived of a fair trial when the district court refused to charge the jury on the defense of self-defense?

2.  Was appellant improperly convicted of the enhanced offense when the indictment failed to allege the "physical contact" element requiring the vacatur of appellant's sentence?

**STATEMENT OF THE CASE**

Appellant was convicted of enhanced assault of a federal officer for having assaulted a U.S. Marshal after a team of U.S. Marshals and correction officers entered the cell in which Hidalgo was being held.  The officers entered the tiny cell en masse in an effort to cuff him to facilitate his transfer to the district court for a court appearance.  There was no dispute at trial that the Hidalgo had struck Bona.  Instead, the issue was Hidalgo's motivation.  Hidalgo attempted to assert a defense of justification but that defense was cut out from under him when the district court refused to give such an instruction.  Even without the instruction, the jury asked for a read-back of practically the entire trial and a replay of the video which had captured the officer's action leading

---

"Doc#" refers to docket entries contained on the district court's docket sheet for Indictment No. 13 cr. 205 (RJA) reprinted at A1 to A12 and "PSR" refers to the Pre-Sentence Investigation Report filed with this Court under seal.

2

up their entry into Hidalgo's cell where the alleged assault occurred. And, it was only after a substantial delay in getting those readbacks to the jury, that they jury suddenly returned with a guilty verdict. Hidalgo now appeals.

### STATEMENT OF FACTS

**A. Indictment.** Hidalgo was charged in a single count indictment with a violation of 18 U.S.C. §§111(a)(1) and (b), in that on September 17, 2013, Hidalgo "intentionally did forcibly assault, resist, oppose, impede, intimidate, and interfere with J.B. . . . a Deputy United States Marshal, while he was engaged in, and on account of the performance of, his official duties, and during the commission of such acts, did inflict bodily injury on J.B." A13-A14. The indictment failed to allege the "physical contact" element contained in the statute.

**B. Trial.** The government called four witnesses, James Bona, the deputy U.S. Marshal who was punched by Hidalgo (A19-A90); John Serdula, another deputy U.S. Marshal who was working with Bona that day in transporting prisoners and who together with Bona rushed into Hidalgo's cell to subdue him (A129-A159); Charles Tomasella a contract detention officer at ICE's Buffalo Federal Detention Facility (BFDF) in Batavia, New York and the officer who opened the door to Hidalgo's cell when Bona and Serdula ran in (A102-A129);

3

and Dr. Gregory Phillies, a radiologist who treated Bona the day of the event. A90-A102.

The evidence at trial established that Hidalgo was being held at the BFDF.[2]  A130-A131.  On the morning of September 17, 2013, Hidalgo was scheduled to be transported to the courthouse for an appearance in connection with the 2011 charges.  *Id.*  Deputy United States Marshal James Bona was responsible for coordinating the housing and transport of local federal inmates from BFDF to the federal courthouse in Buffalo.  A130.  Bona had received an order to transport Hidalgo from BFDF to the Courthouse for an appointment and to relocate him to another facility at BFDF's request.  A23.  Either Serdula or Bona drove the USMS transport van to Batavia alone and the two met before entering the facility together.  A24.

After they arrived Bona completed paperwork and called the courthouse because of mix up in the paperwork related to one of the other inmates to be transported that day, while Serdula prepared the chains and other equipment for prisoner movement.  A27, A31.  Both were standing in the area in front of isolation cell #118 in which Hidalgo was then housed, in anticipation of his move.  At some point while Bona was on the phone, Serdula attempted to open

[2] Hidalgo was being housed at the BFDF as a result of earlier charges in the Western District of New York.  The jury however was not informed regarding the reason for his prior arrest.

the cellblock door.  A31.  Hidalgo was yelling profanities that he didn't want to leave.  A110.  Because Hidalgo had taken a boxer's stance, Serdula then closed the door without extracting Hidalgo.  A31-A32.

Bona who had been on the phone immediately removed his suit jacket and began to charge into the cell, followed closely by Serdula and then additional officers to physically restrain and extract Hidalgo for transport.  A76-A77.  The cell was approximately three and half to four feet wide by seven feet.  A74-A75.  Hidalgo who could see through the cell door the officers charging into the cell backed up into the corner of the cell against the wall.  A79, A153.  Serdula who entered second lunged at Hidalgo midriff when he heard two punches.  A143.  BFDF personnel who had rushed into the cell after Bona and Serdula helped restrain Hidalgo.  A80, 143.

Bona who was the recipient of the punches suffered a laceration under his eye and a deviated septum.  A38.  When questioned at the time regarding his level of pain, Bona indicated zero on a scale of 1 to 10.  A86.  BFDF personnel tended to Bona's wounds and photographed his face.  A42.  Bona and Serdula then completed the transport of Hidalgo and the other inmates to the United States Courthouse in Buffalo, New York. A41. Although he received a right hook from Bona, Hidalgo had no visible injuries and denied needing any medical attention.  A38, A40-A41.

5

Later that day Bona was treated at the Erie County Medical Center in Buffalo, New York. Dr. Phillies evaluated Bona's CT scan and concluded that Bona had sustained a broken nose. A98.

At the end of the first day of trial, the government rested. A159. That evening the district court held an off the record charge conference. A163. The next day the defense urged the court to give a charge regarding self-defense, a request which the district court denied. A168-A177. The defense rested without calling any witnesses. A180. After summations and the charge the jury left to deliberate. Shortly after deliberations began the jury requested to view the prison video that had been put into evidence. A236. The video displayed the area around Hidalgo's cell on the day of the incident and showed the officers going into the cell but did not have a view inside Hidalgo's cell. A28. Rather than play the video for the jury then, the district court discharged them for the day. A237.

The next morning the jury arrived and was shown the video after which they resumed deliberations. After an hour of additional deliberations the jury requested a readback of the testimony of Tomasella, Bona and Serdula, i.e., the entire trial but for the medical evidence. A245-246. At approximately 1:30 that same day, the jury sent a note asking "Is there an approximate time when we can see the testimony? We can't deliberate any longer until we have reviewed

6

the testimony. Thank you." Doc#58-2.  This note was never put on the record. The court responded send back a note stating the court reporter should be ready by 2:30. Doc#58 at 3.  A 2:11 the jury entered the courtroom and the district court informed counsel that it had reached a verdict.  A246.  The jury returned a verdict of guilty.  A.246-247.

**C.  Sentencing.**  Subsequent to the verdict, appellant pled guilty in connection with the 2011 charges and the case was consolidated for purposes of sentencing.  Ultimately, the district court sentenced Hidalgo to 20 years in connection with the assault charges to run concurrent to a 262-month sentence on the 2011 case.  A292.  The district court granted Hidalgo's motion to file a notice of appeal out of time.  Doc#82; A297.

**SUMMARY OF ARGUMENT**

The heart of Hidalgo's defense was that he acted in self-defense because he feared serious bodily injuries when a team of Marshals and correction officers charged into his small cell while he was backed against the wall.  While the government disagreed with Hidalgo's version of the events, the test for determining whether he was entitled to the instruction does not turn on whose view of the facts was more probable but rather whether Hidalgo submitted more than a scintilla of evidence justifying the instruction. Hidalgo submits that he satisfied that minimal threshold.   The jury certainly had its doubts

7

concerning the government's proof.  During its deliberations the jury requested a playback of the prison video showing the events leading up to the officers' entry into Hidalgo's cell, and a readback of three of the four witnesses to testify at trial.  In other words, the jury asked for essentially a do-over of the nearly the entire trial.  It was only after the hours-long delay in getting this testimony to the jury, that the jury presumably frustrated, caved in and returned a guilty verdict.  Had the jury been properly instructed there is a reasonable probability that the jury would have acquitted Hidalgo.

In addition, while the jury was instructed regarding the aggravated assault offense, the indictment omitted one of the conceded essential elements of that offense, i.e., physical contact.  As a result, Hidalgo could not be convicted of an offense greater than a misdemeanor.  Hidalgo is entitled to a resentencing.

# ARGUMENT

## POINT I: HIDALGO WAS DEPRIVED OF A FAIR TRIAL WHEN THE DISTRICT COURT DENIED HIS REQUEST TO INSTRUCT THE JURY ON JUSTIFICATION

The Supreme Court has observed the fundamental proposition that:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.

*Crane v Kentucky,* 476 U.S. 683, 690 (1986). Here, Hidalgo attempted to mount a defense of justification, i.e., that Hidalgo was justified in hitting Bona because he possessed an objectively reasonable belief that such force was necessary to avoid serious bodily injury. In furtherance of his defense, Hidalgo requested that the jury be given the following instruction:

> The defendant contends that he acted in self defense. This defense is available only when the defendant was under an unlawful present or imminent threat of serious bodily injury or death. A present or imminent threat of serious bodily injury or death must be based on a reasonable fear that a real and specific threat existed at the time of the defendant's assault, resistance, opposition or impediment. If the defendant unlawfully assaulted, resisted, or impeded a correctional officer when no reasonable fear of a present or imminent threat of serious bodily injury or death actually existed, his defense of self-defense must fail.

9

Doc#41.  There was no dispute below that justification can be a defense to a violation of 18 U.S.C. §111.  And, the government agreed that if the court ruled that a self-defense instruction was appropriate, Hidalgo's requested instruction was a correct articulation of the law.  Doc#53 at 6.  Moreover, the government conceded below that if defendant presented even a scintilla of evidence to support his defense then the requested instruction was required.  Doc#31 at 5 (*citing United States v. Morton*, 999 F.2d 435, 438-40 (9th Cir. 1993)).

The government's argument appeared to be that because the officers entered the cell with their bare hands it would have been objectively unreasonable for Hidalgo to believe he was exposed to a risk of serious bodily injury.  Doc#31 at 6-7.  An argument the district court appears to have adopted.  A175 ("What would be the serious bodily injury? I mean, they didn't have any weapons. They didn't have any clubs.").  In addition, the government argued that because Hidalgo had acted aggressively he could no longer claim self-defense.  A173.  The district court appears to have rejected the defense argument that any aggression by Hidalgo occurred prior to any entry to the cell and by the time the officers rushed Hidalgo into the corner of the tiny cell, the prior aggressive threats were irrelevant.  A177 ("you can't isolate one from the other.  It's all part of the res gestae. It's all part of the event.").

10

The district court rejection of Hidalgo's justification defense was error. Whether Hidalgo possessed an objectively reasonable belief that he was in danger of serious bodily injury was a question that should have been left for the jury. The government was certainly free to argue to the jury that Hidalgo had no reason to fear serious body harm from the weaponless agents but the jury very well may have concluded that Hidalgo properly possessed an objectively reasonably fear of serious bodily injury even from the bare-handed Marshals. One need not look further than such incidents like Eric Garner's death at the hands of unarmed law enforcement officers to demonstrate that an individual can reasonably succumb to even death and certainly serious bodily injury when charged by several officers, even though they are subduing him with their bare hands.

Moreover, whether Hidalgo had been "charged" by the officers was another question for the jury. Certainly, Hidalgo presented a view of the evidence that supported such an argument. *See, e.g.,* A76-A77 (Bona admits that after removing his jacket and tie he "walked quickly" to Hidalgo's cell "under the impression I'm about to get into a fight."); A156 (Serdula who followed Bona into the cell is wrapped around Hidalgo's body before punches are heard).

11

Likewise, whether Hidalgo's earlier actions deprived him of the defense should also have been left as a question for the jury. *See, e.g., Sams v. United States*, 721 A.2d 945, 952 (D.C. 1998) (instruction to jury that one who "deliberately puts himself in a position where he has reason to believe that his presence will provoke trouble cannot claim self-defense"). Moreover, "mere words, without more, do not constitute provocation or aggression." *United States v. Guyon*, 717 F.2d 1536, 1541 (6th Cir. 1983); *Sams, supra*, (same). Here, Hidalgo had at least a reasonable argument that his earlier statements uttered behind a closed cell door were "mere words" which did not disentitle him to the defense.

In sum, Hidalgo came forward with a sufficient showing to entitle him to a defense. It was for the jury to decide whether the government had disproved beyond a reasonable doubt his entitlement to the defense. The denial of the requested charge deprived Hidalgo of his constitutional right to present a defense and therefore denied him a fair trial. Hidalgo's conviction should be vacated.

**POINT II:  HIDALGO WAS IMPROPERLY CONVICTED OF THE ENHANCED OFFENSE WHEN THE INDICTMENT FAILED TO ALLEGE THE "PHYSICAL CONTACT" ELEMENT NECESSITATING THE VACATUR OF APPELLANT'S SENTENCE**

The indictment purported to charge Hidalgo with the enhanced offense of assaulting a federal officer, i.e., one that also caused bodily injury.  It omitted, however, one of the elements, i.e., physical contact.  As a result, under the indictment with which he was charged Hidalgo could only be convicted of the misdemeanor assault offense.  Accordingly, Hidalgo's sentence of 20 years must be vacated.

18 U.S.C. §111(a) makes it a misdemeanor to assault a federal officer during the course of his duties.  The offense is further elevated to a felony with an 8-year statutory maximum if the assault also involved "physical contact."  The penalties are enhanced even more -- up to a maximum of 20 years -- where the offense involved "bodily injury."  18 U.S.C. §111(b).[3]  Both the government

---

[3] The full text of 18 U.S.C. §111 provides as follows:

**(a)IN GENERAL.—**Whoever—

**(1)**forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or
**(2)**forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit

in its requested instructions and the district court in its charge to the jury

recognized that "physical contact" was an element of the aggravated "bodily

injury" offense. Thus, in its requested instructions the government asked the

district court to instruct the jury that to convict Hidalgo of the enhanced offense

it had to find five elements.

> First, that on or about the date specified in the indictment, James Bona was a federal officer as I will define that term for you;
> Second, that at that time, the defendant forcibly assaulted (or resisted or opposed or impeded or intimidated or interfered with) James Bona and *this forcible action involved actual physical contact with James Bona*.
> Third, that, at the time, James Bona was engaged in the performance of his official duties; and
> Fourth, that the defendant acted willfully.
> Fifth, that the defendant's actions resulted in bodily injury.

Doc#32 at 9 (*citing* L. Sand, et al., Modern Federal Jury Instructions, Instruction

14-2)(emphasis added). With regard to the second element, the district court

instructed the jury with the above quoted language verbatim. A224-225

("second, at the time the defendant forcibly assaulted or resisted or opposed or

---

another felony, be fined under this title or imprisoned not more than 8 years, or both.

**(b)Enhanced Penalty.—** Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

impeded or intimidated or interfered with J.B. and this forceful action involved actual physical conduct with J.B.").

While the jury instructions may have charged all of the elements of the offense, the indictment failed to reflect the grand jury's determination that "physical contact" had occurred. As a result, and consistent with the Sixth Amendment, Hidalgo could not be sentenced to anything greater than the one-year statutory maximum for the misdemeanor offense.

Absent an allegation in the indictment establishing all of the elements of the enhanced offense, the fact that the jury may have found the missing element is insufficient to establish a conviction under the more serious offense. *United States v. Cordoba-Murgas*, 422 F.3d 65 (2d Cir. 2005). Thus, in *Cordoba-Murgas* this Court held that

> though an indictment can be waived by a defendant, admission of quantity in a plea allocution does not constitute a waiver of the required elements of an indictment.

422 F.3d at 66. Because such admissions (or jury finding) do not constitute a waiver, *Cordoba-Murgas* held that the defendant could not be convicted and sentenced to a more serious offense than may otherwise have been supported by his admissions during the plea.

This Court reached the same result in *United States v. Gonzalez*, 686 F.3d 122 (2nd Cir. 2012). In *Gonzalez*, the government failed to allege drug quantity in the indictment, although the indictment did cite to the more serious statutory provision and the government at the plea indicated that it was charging the defendant with the more serious offense. Over the defendant's objection, the district court charged the jury and the jury convicted the defendant of the more serious drug offense. On appeal this Court reversed. *Gonzalez* found that even though the defendant had notice that the government intended to prove the higher quantity offense, absent a charge in the indictment supporting the more serious offense, a conviction and sentence for the more serious offense was invalid. The holdings in *Cordoba-Murgas* and *Gonzalez* are fatal to Hidalgo's conviction in this case.

Moreover, Hidalgo was prejudiced by the error. First, but for the error Hidalgo could not have been sentenced to more than a one-year sentence, as opposed to the 20-year sentence he received. Moreover, Hidalgo was directed to pay a $100 special assessment as a result of his conviction, when the special assessment for a misdemeanor is only $25. 18 U.S.C. § 3013. The erroneous imposition of additional special assessment affects a defendant's substantial rights and seriously affects the fairness, integrity, and public reputation of

16

judicial proceedings.  *United States v. Moreno-Montenegro,* 553 Fed.Appx. 29 (2d Cir. 2014).

## CONCLUSION

For the foregoing reasons, Hidalgo's conviction and sentence should be vacated.

Dated: New York, New York
      November 6, 2017

            _____/s/_____
            STEVEN Y. YUROWITZ, ESQ.
            *Attorney for Defendant-Appellant*
            *Jordan Hidalgo*
            950 Third Avenue
            New York, New York 10022

            (212) 308-7900